IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs July 24, 2018 at Knoxville

**JEROME PERKINS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Wilson County**
**No. 11-CR-343      John D. Wootten, Jr., Judge**

_____

**No. M2017-00801-CCA-R3-PC**

_____

The petitioner, Jerome Perkins, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received effective assistance of counsel at trial. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Tillman W. Payne III, Nashville, Tennessee, for the appellant, Jerome Perkins.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Neal Pinkston, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Facts and Procedural History**

During a traffic stop on November 6, 2010, officers discovered the petitioner was driving on a revoked license and was hiding cocaine in his shoe. As a result, the petitioner was charged with and convicted of driving on a revoked license, third offense, and possession of 0.5 grams or more of cocaine, a Schedule II controlled substance, with intent to sell or deliver.[1] _State v. Jerome Perkins_, No. M2013-02164-CCA-R3-CD, 2014 WL 2829390, at *1 (Tenn. Crim. App. June 20, 2014), _perm. app. denied_ (Sept. 25,

---

[1]Prior to trial, the petitioner pled guilty to the driving offense. As such, he proceeded to trial on the drug offense alone.

2014). On direct appeal, this Court affirmed the petitioner's drug conviction and, in doing so, provided the following summary of the underlying facts:

At [the petitioner's] October 11, 2012 trial, the State called Officer James Tuggle with the Lebanon Police Department as its first witness. He had attended several schools involving drug interdiction and drug identification and had also amassed on-the-job training in his over nine years of law enforcement experience. Officer Tuggle testified that on November 6, 2010, he was working in the West Main Street area, which was known for drug activity. As Officer Tuggle observed a residence, he saw [the petitioner] pull away from the residence driving a white Chrysler Sebring. The vehicle had a nonfunctioning brake light, so Officer Tuggle initiated a traffic stop of the vehicle on Hill Street. After obtaining [the petitioner's] personal information, Officer Tuggle confirmed that [the petitioner's] driver's license had been revoked. Officer Tuggle then placed [the petitioner] under arrest. During the search incident to arrest, Officer Tuggle found a plastic bag that contained what appeared to be crack cocaine in [the petitioner's] left shoe. Officer Tuggle believed that [the petitioner] possessed the crack cocaine for the purpose of selling it based upon his presence at a residence known by police to be a "drug den;" his possession of $83 in his pocket coupled with his being unemployed; his lack of drug paraphernalia that would indicate possession for personal use; and his general health and appearance, which suggested that [the petitioner] did not use drugs himself.

On cross-examination, Officer Tuggle admitted that he was unaware of whether [the petitioner] possessed the crack cocaine when he entered the residence or whether he purchased it while visiting the residence. He also acknowledged that he found neither a weapon nor scales in [the petitioner's] possession, which would be common for a drug dealer to possess. He also confirmed that he did not return to the residence or interview any of the occupants therein to corroborate his opinion. Officer Tuggle stated that the plastic bag containing crack cocaine was not subjected to fingerprint testing. Officer Tuggle opined that a person would not smoke more than 0.5 grams of crack cocaine at one time, so he inferred that [the petitioner] possessed 1.6 grams to sell.

On redirect examination, Officer Tuggle stated that a "crack head" would not normally wait to use the remainder of the drugs in his possession at a later time. He characterized the size of the rock as the size of a

thumbnail, whereas the amount that would fit inside a crack pipe was smaller than a "pinkie" nail.

Tennessee Bureau of Investigation Special Agent Forensic Scientist William Stanton testified next and confirmed that the rock was crack cocaine that had been "cut," or combined with another substance, and that it weighed 1.6 grams.

Lebanon Police Officer Jason Toporowski testified that he responded to Officer Tuggle's traffic stop of [the petitioner's] vehicle. When he arrived, Officer Tuggle had already taken [the petitioner] into custody. Officer Tuggle requested that [the petitioner] remove his shoes, and when he complied, Officer Toporowski observed a clear plastic bag fall from the shoe. He also confirmed that he knew the residence in question to be a "drug house," or a place that people frequented to use drugs. The State then rested its case-in-chief.

[The petitioner] did not present any evidence. Upon the State's proof, the jury found [the petitioner] guilty of possession of more than 0.5 grams of cocaine with intent to sell or deliver.

At a subsequent hearing, the trial court sentenced [the petitioner] as a multiple offender to fifteen years for possession of cocaine and the agreed-upon concurrent sentence of eleven months, twenty-nine days for driving on a revoked license, third offense.

*Id.* at *1-2.

The petitioner timely filed a *pro se* petition for post-conviction relief which was later amended by counsel. In the amended petition, the petitioner argued trial counsel was ineffective for failing to investigate and prepare his defense, failing to challenge the constitutionality of the traffic stop which led to his arrest, failing to pursue possible defense strategies resulting from the State's alleged failure to preserve video footage of the traffic stop, failing to review the audio recording of the petitioner's preliminary hearing to aid in his defense, failing to file any pretrial motions to limit testimony about John Mack Draper, the owner of the alleged "drug house" who died prior to the petitioner's trial, failing to challenge the chain of custody of the drugs entered into evidence at trial, and failing to present evidence to challenge Officer Tuggle's testimony or establish the petitioner's drug addiction as a defense.

At the post-conviction hearing, the petitioner focused on the constitutionality of the traffic stop which led to his arrest and the alleged ineffectiveness of trial counsel regarding the same. Shanetta Browne, the owner of the car the petitioner was driving at the time of the traffic stop, testified the tail lights were working properly when the petitioner borrowed her car on November 6, 2010. After the petitioner's arrest, Ms. Browne's car was towed to a lot where she picked it up the next day. Upon retrieving her car, the tow lot employees "said that everything was working fine," and she relayed this information to the petitioner. Ms. Browne further stated, "I've never had to get anything fixed on the car." Ms. Browne did not discuss the condition of her car with trial counsel because, "[h]e didn't bring it up" and she did not believe it was an issue.

In contrast, Officer Tuggle testified he pulled the petitioner over after observing the passenger side brake light out on the petitioner's car as he left "a known drug house" on November 6, 2010. Officer Tuggle arrested the petitioner during the traffic stop after discovering the petitioner's driver's license had been revoked. During the subsequent search, Officer Tuggle found "what [he] believed was crack cocaine in [the petitioner's] shoe." Officer Tuggle believed the petitioner intended to sell the cocaine, and he testified to the same at trial. Though his police vehicle captured the traffic stop on video, the video was not preserved. During cross-examination, Officer Tuggle explained it was the policy of the Lebanon Police Department to destroy video footage from police vehicles after ninety days absent a hold to save the same. He stated holds were typically only used for "DUIs and [u]ses of [f]orce" cases due to the storage space available at the time.

The petitioner then testified, stating though he met with trial counsel numerous times, they did not discuss his case "until about a week before the trial." Instead, the meetings consisted of the petitioner "just giving [trial counsel] money and [trial counsel] giv[ing] [the petitioner] another court date." During one meeting, however, the petitioner asked trial counsel to request the video footage of his traffic stop and arrest as he believed it would show the brake light was working prior to the stop. According to the petitioner, trial counsel refused stating, "I'm not going to ask for that video tape. That tape is not gonna help you." The petitioner also wanted trial counsel to contact witnesses, including Shanetta Browne, John Mack Draper, and tow lot employees, to support his assertion that the brake light was functioning properly at the time of the initial traffic stop, but trial counsel refused to do so.

The petitioner admitted to discussing a proposed plea deal with trial counsel, but stated they did not discuss discovery, the suppression of evidence, or witnesses. As such, the petitioner complained trial counsel did not investigate his case or pursue his theory that the traffic stop was illegal. Further, the petitioner stated trial counsel did not file any pretrial motions to limit testimony about Mr. Draper or to suppress evidence from the traffic stop, including the amount of cocaine found during the search. The petitioner did

admit Mr. Draper passed away before trial counsel had the chance to speak with him, but also claimed trial counsel refused to meet with Mr. Draper or Ms. Browne. According to the petitioner, trial counsel's trial strategy was "[n]othin." The petitioner believed his defense was "basically [his] word against this cop."

The petitioner also argued the audio recording of his preliminary hearing was not captured in full. The petitioner offered testimony from Heather Brown, an employee in the General Sessions Court for Wilson County, in an attempt to show trial counsel did not request a copy of the audio recording of the preliminary hearing. Ms. Brown testified she received a request for the audio recording of the preliminary hearing from post-conviction counsel, a copy of which was entered into evidence. Though Ms. Brown stated she received no other requests for the preliminary hearing recording, she also testified she began working in the clerk's office on August 15, 2012 and was unaware of any requests made prior to that date.

During cross-examination, the petitioner admitted that while his present charges were pending, he was under indictment for aggravated assault for which trial counsel also represented him. The petitioner explained he retained trial counsel in August 2011, after his preliminary hearing in this case. The petitioner claimed he did not know Mr. Draper passed away in July, prior to his retaining trial counsel in August.

The petitioner continued to assert trial counsel "didn't do nothing." He stated trial counsel did not discuss the risk of him testifying and being subject to cross-examination at trial. However, the petitioner also stated:

> All [trial counsel] told me was, that we're not gonna put you on the stand because they -- I already been to trial I know what's goin on at trial. So I already know that if I get on the stand they gonna open up and bring up all my past history. That was all he told me.

The petitioner denied telling trial counsel that he wanted to pursue an addiction defense, but then stated, "I'm tellin him I done been to rehab and everything. They need to know this. He didn't never want to bring that up." The petitioner told trial counsel that he was high on cocaine during his trial, but trial counsel refused to "bring that up" as well.

The petitioner admitted to having "some powder and that little rock" of cocaine on him during his arrest. However, he stated he did not have any paraphernalia indicating his use of cocaine other than "some rolling papers." The petitioner explained he did not use needles or a pipe to get high and further admitted he told Officer Tuggle during his arrest that he was high and had "just bought dope" from Mr. Draper's house. Despite clear evidence indicating the video of the traffic stop was unavailable, the petitioner

stated, "If y'all can get that video tape, I promise you it will set the record straight. The officer lied."

During redirect examination, the petitioner stated he did not see any of the pre-trial motions filed by the State and did not discuss any motions with trial counsel. The petitioner again asserted trial counsel refused to pursue the video tape evidence prior to and during trial.

During recross-examination, the petitioner recalled that during trial, trial counsel mentioned the petitioner's drug use during closing argument, pointed out the amount of cocaine found in the petitioner's shoe did not affect the way he walked, noted Officer Tuggle did not know if the petitioner possessed cocaine before entering Mr. Draper's house prior to his arrest, indicated the petitioner did not have a weapon on him at the time of his arrest, argued the baggie found on the petitioner was not fingerprinted and there was no evidence of how long the cocaine had been in the petitioner's shoe, objected to references to Mr. Draper's house as a drug den, and cross-examined all of the State's witnesses. Though he acknowledged trial counsel employed these trial strategies and techniques, the petitioner remained focused on the fact that trial counsel "didn't ask for that video tape." The petitioner stated, "[trial counsel] did a little something, but he just didn't do what I asked him to do. I mean, like for one, challenging that stop, that illegal stop, illegal search and seizure. He didn't want to challenge that."

The petitioner recalled Ms. Browne, who again testified the lights on her car were working when she picked it up from the tow lot after the petitioner's arrest. The petitioner then closed his proof.

The State offered testimony from trial counsel who stated he was retained to represent the petitioner for his drug case and an aggravated assault case. Trial counsel met with the petitioner "[a]pproximately 20 times." He admitted "the vast majority of [his] investigation was primarily focused on the assault" because it "was the more serious because it was a crime of violence and there was a gun involved." During their initial meeting, trial counsel and the petitioner discussed the charges and facts surrounding the petitioner's cases and developed "a plausible defense."

Trial counsel stated he was present for the petitioner's preliminary hearing, though he did not represent the petitioner at the time. However, trial counsel indicated he requested a copy of the recording of the preliminary hearing and discussed it with the petitioner. Subsequent to the preliminary hearing, trial counsel learned video footage of the petitioner's arrest did not exist and discovered "there was no other indicia[] of him being a [drug] dealer other than a possession charge." Trial counsel used the information

learned at the preliminary hearing to form his trial strategy, which he explained, as follows:

> I mean, the stop, I mean, it was a consent search initially. Then it was a search incident to a lawful arrest on the [d]riving on a [s]uspended. The cocaine was found in his shoe. So we really couldn't say, [w]ell, it's not my cocaine. It's not my shoes. The real issue at trial that we tried to convince the jury was, it was kind of entire defense strategy was, [h]ey, we're not saying this is not cocaine. We're not saying it's not his cocaine. We're saying he's not a drug dealer. He's rather only a drug user. Substantial different issue.

While trial counsel proceeded to trial with the understanding that no video existed, he continued to request a copy of the same, explaining "on the eve of trial we just followed up again to make sure that there was not [a video] and there was not. We learned after the fact that [the video] was destroyed sometime after the preliminary hearing but prior to me being retained on the case." As a result, trial counsel believed a motion to suppress evidence from the petitioner's traffic stop would be unsuccessful "absent a video." Furthermore, trial counsel did not believe a *Ferguson* motion would be appropriate to file in regards to the missing video footage because no evidence of bad faith on behalf of the State existed to support the same. *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999). Trial counsel did not file a motion for discovery because "[he was] provided everything [he] asked for."

Regarding witnesses, trial counsel explained he considered calling Ms. Browne to testify to the brake light working on her car, but believed her testimony "would not have been credible because she was not present at the time of the actual stop and also in that, basically that her testimony would be questioned because of her relationship with [the petitioner]." Trial counsel confirmed Mr. Draper passed away prior to his representation of the petitioner and as a result he was unable to interview him. Trial counsel also explained trial testimony about Mr. Draper's house as a known drug house "was more consistent with [their] defense theory" because it supported the theory that the petitioner went to Mr. Draper's house to buy drugs, not to sell them. Further, trial counsel did not challenge the chain of custody of the drugs entered into evidence because the State presented a reasonable chain of custody at trial.

Regarding Officer Tuggle's testimony, trial counsel explained he employed all available strategies to challenge his testimony during cross-examination. For example, trial counsel objected when Officer Tuggle offered opinion testimony describing the typical appearance and characteristics of drug users, a mold within which the petitioner did not fit according to Officer Tuggle. While trial counsel objected to Officer Tuggle's

implication that the petitioner was a drug dealer, rather than a drug user, he did not want to put the petitioner on the stand to support a drug user defense because of his past criminal record which included a prior drug sale.

Trial counsel discussed the ten-year plea offer with the petitioner "on a number of occasions" but the petitioner "was not in a position where he was willing to consider any kind of plea." Trial counsel later discussed a subsequent eight-year offer with the petitioner, but he rejected that too.

After trial, trial counsel filed a motion for new trial on the petitioner's behalf, but their relationship soon deteriorated. The petitioner fired trial counsel from the assault case which was still pending and after the appointment of new counsel, a "pretty favorable" plea deal was made.

Trial counsel provided discovery to the petitioner twice, both prior to and after trial. Prior to trial, trial counsel provided the petitioner with "a copy [of discovery] to draw all over, make [his] notes, come back and [] go over it" with trial counsel. After trial, the petitioner filed a complaint with the Tennessee Board of Professional Responsibility claiming trial counsel failed to provide him with the discovery in his case. As a result, trial counsel provided the petitioner with "another copy of his entire file."

During cross-examination, trial counsel stated he did not have the petitioner reject the State's plea offers in writing. Rather, "[the petitioner] said he didn't want to take [the offers] so we set it for trial." Trial counsel reviewed the preliminary hearing tape with the petitioner which "is what provided us the basis of going forward on our defense strategy." Additionally, in preparation for trial, trial counsel stated he spoke to preliminary hearing counsel regarding the petitioner's case. Trial counsel noted Mr. Draper was "never an option" as a witness "because [Mr. Draper] was already deceased by the time [trial counsel] became involved in the case." He also did not believe video footage of the petitioner's traffic stop was critical to the petitioner's case, noting again that the tape did not exist according to preliminary hearing counsel and trial counsel's attempts to request a copy of the same. Trial counsel stated the petitioner and Ms. Browne told him "all rear lights on the vehicle" were working after the petitioner's arrest.

Regarding Officer Tuggle, trial counsel stated he objected to his testimony "repeatedly, everywhere [he] possibly could," but he did not present evidence to rebut Officer Tuggle's testimony because it supported their defense theory. Trial counsel again explained:

> Everything that Officer Tuggle testified to factually was consistent with a possession charge rather than possession with intent to resale (sic).

His testimony if you may not recall about his observations on [the petitioner] being more consistent with a drug dealer than a drug user. I objected, thoroughly, repeatedly, and again, and again, and again. I even objected on the grounds that, hey, you're not qualified to make those calls.

Trial counsel asserted the jury "got it wrong" as the evidence only supported possession rather than possession with the intent to resell. He explained "[t]he best evidence I had was the State's own testimony" which demonstrated the petitioner did not have a weapon, a significant amount of money, scales, or ledgers at the time of his arrest. Trial counsel did not believe any witnesses existed to support his defense theory.

The petitioner testified again in rebuttal. He reaffirmed many of the issues reviewed during direct examination, but also admitted trial counsel discussed the defense theory of possession for use rather than resale with him. He further claimed trial counsel only relayed the ten-year plea offer to him, not the eight-year offer, claiming he would have taken the eight-year offer for both the drug and aggravated assault charges. The petitioner again asserted he discussed Mr. Draper with trial counsel and urged trial counsel to speak to Mr. Draper.

During rebuttal cross-examination, the petitioner admitted to a 2001 "Schedule II felony." He also explained he believed the ten-year plea offer was for both of his charges, though he refused it. The petitioner stated he tried to fire trial counsel at trial because "he wouldn't do nothing that [he] said," but trial counsel told him it was too late. The petitioner claimed trial counsel told him "to dress like an addict" for trial.

Finally, the State offered rebuttal proof from trial counsel who detailed the plea offers made prior to trial, stating:

> The original offer was ten years to serve. Then there were two separate cases. Eventually [the State] agreed to reduce the more serious charge to an eight-years to serve, which I shared with [the petitioner]. But his statement to me was, [i]f it was not a probated sentence he was not going to take anything.

Additional testimony revealed the final offer was a ten-year sentence for the drug charge to run consecutively to an eight-year sentence for the aggravated assault charge, which the petitioner rejected.

After taking the matter under advisement, the post-conviction court denied the petition. This timely appeal followed.

**Analysis**

On appeal, the petitioner argues trial counsel was ineffective for not investigating his case or "develop[ing] a defense strategy to challenge the credibility of the [S]tate's main witness[,] Officer Tuggle." The petitioner asserts trial counsel "refused to engage and left the [S]tate's case unchallenged but for cross[-]examination." The petitioner asserts trial counsel's alleged ineffectiveness prejudiced his case, arguing absent trial counsel's ineffectiveness "there is a reasonable possibility that a jury would have found [the petitioner] guilty of a lesser[-]included offense." The State contends the post-conviction court properly denied the petition because the petitioner "failed to overcome the strong presumption that trial counsel exercised reasonable judgment in all significant decisions [or] that counsel's alleged failings inured to his prejudice." Following our review of the record and submissions of the parties, we agree with the State and affirm the judgment of the post-conviction court.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *See Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo*, affording a presumption of correctness only to the post-conviction court's findings of fact. *See id.*; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that

counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id.* Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The petitioner asserts trial counsel was ineffective for not investigating his case or properly challenging Officer Tuggle's testimony at trial. At the post-conviction hearing, however, trial counsel explained his investigation into the petitioner's case and detailed his efforts to demonstrate the petitioner was a drug user, rather than a drug dealer, through Officer Tuggle's testimony. As noted by the post-conviction court:

[Trial counsel] testified that he thought the best theory in this case was to try to show the amount in question – I'm talking about the amount of the drug in question was small – and that he was essentially a user rather than possessing for the purpose of sale or delivery.

The crime laboratory report showed that the quantity of the drug was 1.6 grams, which is the amount which is in excess of .5 grams that the indictment charges.

As I said, the whole theory was to convince the jury that the petitioner was a user rather than a dealer. [Trial counsel] vigorously cross[-]examined [Officer Tuggle] regarding the fact that there were no scales, paraphernalia, drug sale journals, or any other indicia that would indicate that he was a merchant of drugs.

Similarly, at the post-conviction hearing, the petitioner admitted trial counsel pursued the drug user theory at trial by challenging the amount of cocaine found on the petitioner, noting Officer Tuggle did not know when and where the petitioner obtained the cocaine, objecting to testimony characterizing Mr. Draper's house as a drug den, and cross-examining all of the State's witnesses. Furthermore, trial counsel explained he vigorously cross-examined Officer Tuggle during trial and objected to his opinion testimony that the petitioner fit the profile of a drug dealer rather than a drug user. Upon trial counsel's cross-examination, Officer Tuggle admitted "he found neither a weapon nor scales in [the petitioner's] possession, which would be common for a drug dealer to possess," he "confirmed that he did not return to the residence or interview any of the occupants therein to corroborate his opinion," and he "stated that the plastic bag containing crack cocaine was not subjected to fingerprint testing." *State v. Jerome Perkins*, 2014 WL 2829390, at *1. It is clear trial counsel utilized Officer Tuggle's testimony to support the defense theory that the petitioner was a drug user, not drug dealer and nothing in the record indicates trial counsel's strategies regarding Officer Tuggle were not sound. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Simply because trial counsel's strategies were unsuccessful does not render his assistance ineffective. *Id.* The petitioner is not entitled to relief as to this issue.

The record also indicates trial counsel effectively investigated the petitioner's case. Trial counsel stated he met with the petitioner approximately 20 times during which they reviewed the preliminary hearing recording, discussed the discovery file, and considered witnesses for trial. Regarding witnesses, trial counsel explained he did not call Ms. Browne to testify at trial because of credibility issues and the fact she was not on the scene during the petitioner's arrest. Trial counsel noted he did not interview Mr. Draper as he passed away prior to his involvement in the petitioner's case. Regarding the alleged missing police video of the petitioner's stop and arrest, the record indicates trial counsel effectively addressed the same by attempting to obtain the video up until the eve of trial. Because no video existed, trial counsel reasoned any motions relating to the petitioner's stop and arrest would be fruitless. Based upon the foregoing, the petitioner has failed to show by clear and convincing evidence how trial counsel's investigation of the case constituted ineffective assistance of counsel. *See Strickland*, 466 U.S. at 694. The petitioner is not entitled to relief.

**Conclusion**

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____

J. ROSS DYER, JUDGE